# Henry Leister's Appeal.

---

# James C. Swoope's Appeal.

---

# E. F. Gould's Appeal.

---

# James O'Neill's Appeal.

If the record is without fault the supreme court will not review on appeal and certiorari the action of the court of quarter sessions in refusing, under the act of March 22, 1867, a license for the sale of intoxicating liquors.

By supplemental opinion a judge of the court below may, even after

Cited in Sperring's License, 7 Pa. Super. Ct. 131, 134, 42 W. N. C. 37, and in Kahrer's License, 12 Pa. Co. Ct. 12, 15, 1 Pa. Dist. R. 547.

NOTE.—See note to Conway's Petition, 1 Sad. Rep. 43.

The "act to restrain and regulate the sale of vinous and spirituous, malt, or brewed liquors or any admixture thereof," approved May 13, 1887; and that "providing for the licensing of wholesale dealers in intoxicating liquors," approved May 24, 1887, extend throughout the state of Pennsylva-

an appeal is entered, state the facts on which his decision was based, and correct his reasons.

It seems that the applicant's former wilful violation of the liquor laws, coupled with a great preponderance of special remonstrance against granting him a license, constitute sufficient reason for refusing a license.

It seems also that a judge is not justified in refusing a license, merely because he does not think it necessary to license a hotel to sell intoxicating liquors.

(Argued May 25, 1887.   Decided October 3, 1887.)

July Term, 1887, Nos. 32, 33, 34 and 35, E. D., before GORDON, Ch. J., TRUNKEY, CLARK, and STERRETT, JJ.   Certioraris sur appeals from decrees of the Quarter Sessions of Huntingdon County refusing tavern licenses.   Affirmed.

The several petitions of Henry Leister, James C. Swoope, E. F. Gould, and James O'Neill for licenses to keep, during the ensuing license year, inns or taverns in the county of Huntingdon, were filed between the 14th and 18th of March, 1887, set-

---

nia a uniform scale of license fees, graduated in accordance with the classification of municipalities.   See Monaghan, Anno. Liquor License Laws of 1887; Com. *ex rel.* Stein v. McCandless, 4 Pa. Co. Ct. 119

Section 7, of the act of May 13, 1887, is as follows:

"The said court of quarter sessions shall hear petitions from residents of the ward, borough or township, in addition to that of the applicant, in favor of and remonstrance against the application for such license, and in all cases shall refuse the same whenever, in the opinion of the said court, having due regard to the number and character of the petitioners for and against such application, such license is not necessary for the accommodation of the public and entertainment of strangers or travelers, or that the applicant or applicants is or are not fit persons to whom such license should be granted; and upon sufficient cause being shown or proof being made to the said court that the party holding a license has violated any law of this commonwealth relating to the sale of liquors, the court of quarter sessions shall, upon notice being given to the person so licensed, revoke the said license."

Under this literal re-enactment of that portion of § 1, of the act of March 22, 1867, which defined the duty of the court to grant or refuse a license, the method for ascertaining whether a license is "necessary for the accommodation of the public and entertainment of strangers or travelers," and the duty to refuse it if it is not necessary for those purposes, remain unchanged; and the authorities for the interpretation of the act of 1867 apply with equal force to the act of 1887.

The principal cases on this point prior to the decision of Reed's Appeal were reviewed in the note to that case, 4 Cent. Rep. 909.

In subsequent cases some of the courts of quarter sessions have held that

ting forth that the petitioners were citizens of the United States, and that their respective houses, *viz.,* the "Leister House" and "Hotel Brunswick" in the borough of Huntingdon, the "Exchange Hotel" in the borough of Dudley and the "Mountain House" in Broad Top City, were well provided for the accommodation of the public and the entertainment of strangers and travelers, having respectively for the exclusive use of travelers four bed rooms and eight beds, fifteen bed rooms and beds, eight bed rooms and ten beds, and two bed rooms and four beds. The certificates to the first two petitions were signed by fourteen persons each, and the last two were signed by twelve persons each, and set forth that the petitioners were persons of good repute for honesty and temperance, and citizens of the United States, that such inn or tavern was necessary to accommodate the public and entertain strangers and travelers, and that the accommodations of each house were as described in the respective petition for it. Each petition was accompanied by a bond for $2,000, conditioned for compliance with the act of April 12, 1875.

The court below considered the applications April 11, 1887, and on April 14, the following opinion, written by FURST, P. J., was filed in each case by McCARTHY and FOREMAN, A.JJ.:

The fact that the house is necessary for the accommodation

---

in view of Reed's Appeal the necessity for a license is to be determined solely by the number and character of the petitioners for and against each application (Lycoming County Licenses, 3 Pa. Co. Ct. 90; Wayne County Licenses, 3 Pa. Co. Ct. 301); without regard to the aggregate number of licenses granted in the county (*Re* License Application, 2 Pa. Co. Ct. 603); although the contrary was held in Northumberland County Licenses, 2 Pa. Co. Ct. 660; and that where petition and remonstrance are of equal weight the license must be granted (Kistler's License, 2 Pa. Co. Ct. 60); and can be refused only when, other objections failing, the remonstrants largely outnumber the petitioners (Mercer County Licenses, 3 Pa. Co. Ct. 43).

But in other cases it has been held that the petition and remonstrance are not conclusive, but merely persuasive (*Re* Conroy, 3 Pa. Co. Ct. 52; Morris's License, 3 Pa. Co. Ct. 307); and that in the absence of absolute necessity the prevailing sentiment of the community against granting the license should insure its refusal (Chester County Licenses, 3 Pa. Co. Ct. 304).

In two cases it has been held that if the necessity for a hotel is established, the necessity for the license inseparably follows (Beaver County Licenses, 3 Pa. Co. Ct. 56; *Re* Frey, 3 Pa. Co. Ct. 93); and this view seems to be confirmed by the opinion of the supreme court in the case here reported.

of the traveling community and the entertainment of strangers is established. It is the leading hotel in the borough and largely patronized by the public. It has all the accommodations required. The applicant has complied with the requirements of the law. While such is the case, we, the associate judges, do not think that it is necessary to license a hotel to sell intoxicating liquors, and we therefore refuse this application.

In the applications of Leister and Swoope, FURST, P. J., filed the following dissenting opinion:

These applications for license under the law and the evidence in the case clearly should be granted.

The Leister House and the Hotel Brunswick are the principal hotels in the borough of Huntingdon. They are large and commodious and have all the conveniences required by the act of assembly. Both are largely patronized by the traveling public, and, without them, strangers and travelers visiting this town could not be entertained. If these hotels were to close, many persons having business at this place would be compelled to beg for lodging at private dwellings, or be compelled to leave town. It is an undisputable fact that these hotels are an absolute necessity in this place. They are well kept and constantly full of strangers and travelers. The applicants themselves come within all the conditions and requirements of the law. All the provisions of the law relating to the granting of licenses have been complied with in both cases. The petitions for license have been supported by a large number of other petitioners stating the necessity of these hotels for the accommodation of the public.

Remonstrances have been filed, each signed by a large number of most worthy and respectable citizens, male and female, residing in this town. The remonstrants are the best or among the best citizens of the community. They are persons in whose judgment and sincerity and rectitude I have the highest regard and confidence. I have weighed carefully the objections they present to the granting of these applications.

In their remonstrances they will not state that these hotels are not necessary for the accommodation of the public and strangers; they, however, represent that license to sell liquor is not necessary. These remonstrances, therefore, though filed against each applicant by name, are general in their nature and they

remonstrate against the law rather than against the hotel. They do not recognize the fact that the legislature has determined that license shall exist. They ask the court to sit in judgment upon the propriety of the law, and not to administer the law as written in the statute and declared in the decisions of the supreme court.

As a private citizen I have as fixed and positive convictions upon this subject as anyone remonstrating before the court. My sentiments touching the propriety of the license laws of this state and my objections to them have been often publicly expressed. While at the bar I refused to present applications for license. I could then act as prompted by my own individual sentiment, but when I assumed the position of president judge of the forty-ninth judicial district I took upon myself an oath of office that I would obey, defend, and administer the laws of this commonwealth. This obligation requires me to administer every law upon the statute book whether it is obnoxious to me or not. The only guide I can have is the written statute and the rulings thereunder by the supreme court. Loyalty to each requires of me implicit obedience. This is the only safe rule by which, and under which, the law can be administered and the rights of all persons under the law vindicated and protected. There is here no room for private sentiment, or antagonism to the constituted authorities of the law.

If we desire a change in the law our duty is to apply to the legislature. We cannot ask the court of inferior jurisdiction either to set aside an act of assembly, or reverse the decision of the higher court, both of which have been done in this case by my brethren on the bench, who are unlearned in the law.

If we desire the fundamental law of the state changed we obtain this by the vote of the people under a constitutional amendment submitted to them for their approval or rejection. We cannot have this done except in the method pointed out by the law.

Under a license system it is impossible to have prohibition. Whether license should be granted is a legislative not a judicial question. Courts sit to administer the law fairly as it is given to them, and not to make or repeal it. The law of the land has determined that license shall exist, and has imposed upon the court the duty of ascertaining the proper instances in which

the license shall be granted, and therefore has given it to the court to decide upon each case as it arises in due course of law.

The act of deciding is judicial, and not arbitrary or wilful. The discretion vested in the court is therefore a sound judicial discretion, and to be a rightful judgment it must be exercised in the particular case and upon the facts and circumstances before the court, after they have been duly considered; in other words to be exercised upon the merits of each case according to the rule given by the act of assembly. This is the language of the supreme court as delivered by Mr. Justice AGNEW, the apostle of prohibition, in Schlaudecker v. Marshall, 72 Pa. 200.

This doctrine is also affirmed in the recent case of Reed's Appeal, 114 Pa. 452, 6 Atl. 910. It has never been departed from in any reported case of the supreme court. It has been universally received by the profession and by the courts of quarter sessions throughout the state as the settled law of the land.

My brethren have seen fit to depart from it. They hold, notwithstanding this clear enunciation of the law by Judge AGNEW, whose decisions are held in the highest esteem by the bench and the bar, that they have the right to pass upon the propriety of the law and that "in their opinion no license is necessary."

This is not only apparent by their decision in these cases, but also by the fact that they refuse to grant any license to hotel out the sanction of the law. It is an utter disregard of the law and the rights of the people. The judge sits to administer and but one explanation and that is a previous determination before hearing to refuse all applications. This is arbitrary and without the sanction of the law. It is an utter disregard of the law and the rights of the people. The judge sits to administer and not to make the law. To say that I will grant no license to anyone, or that I will grant it to everyone, is not to decide judically on the merits of the case, but to determine beforehand without a hearing or else to disregard what has been heard. It is to be determined, not according to law, but outside of law; and it is not a legal judgment but the exercise of an arbitrary will.

The discretion which the court is required to exercise is a sound legal discretion under the law upon the circumstances of each particular case as presented, and not upon the propriety or impropriety of granting licenses. It is the duty of the court to hear and determine each case upon the evidence, to ascertain the fitness of the applicant, the necessity of the house for the

accommodation of the public, and to see that the applicant has fully complied with the law; and when this is done the right to license is a legal incident which the court cannot withhold in a proper case and which ought not to be granted in an improper one. Where the applicant has failed to bring himself and his house within the provisions of the law he is not entitled to a license; but, upon the contrary, where the provisions of the law have been complied with and the public necessity requires the accommodation of the hotel for the entertainment of strangers and travelers, then the right to a license legally exists and the court violates the law in withholding it.

The fact that the supreme court in Toole's Appeal, 90 Pa. 376, declared that the exercise of the discretion of the court cannot be reviewed, has given rise to the exercise in many cases of an arbitrary discretion, and it is often cited to the court as an "authority to do as you please." It has had its effect in the present case.

Toole's Appeal is not authority for any such doctrine. Because the supreme court may not review the exercise of the discretion of the lower court, it does not follow that the court may then act arbitrarily in deciding these cases.

It affords a greater reason why the court should faithfully and sacredly observe the law and enforce it in its true spirit if no review can be had of its discretion. In the cases before us the reason why the license is refused is set forth so that the question may be presented to the court for review if any review is desired or can be obtained. I would have preferred that the full reasons could have been placed upon record, so that the question might be fully heard before the court. I have endeavored to do so in the short time I have had to prepare this opinion.

I have united in rejecting all the applications for license except five or six which I believe are absolutely necessary for the accommodation of the public. Wherever it was shown or the court had knowledge that there was no real necessity for the hotel as a house for the accommodation of travelers and strangers; where it was shown to the court that it was really intended as a drinking place, or that it would result as a resort for local drinkers; wherever it was shown that the applicant himself was a drinking man, that he kept a disorderly house, that he violated the law in selling to the prohibited class, or on Sunday, or election day; or wherever it appeared that due care

was not exercised by the landlord in the sales of liquors—in all such cases I have ever refused and will continue to refuse to grant license in this district. In all proper cases I feel it to be my duty under my oath of office to grant the license. For these and other reasons I dissent from the judgment of the majority of this court in these cases.

The dissenting opinion of FURST, P. J., in the applications of Gould and O'Neill, was as follows:

Under the law and the facts this license should be granted. I, therefore, dissent from the decree made by the associates.

On April 16, 1887, the day the opinions were filed, these appeals were taken.

On April 21, 1887, the following supplementary opinion was filed by McCARTHY and FOREMAN, A.JJ.:

As there was a misunderstanding with His Honor, Judge FURST in the opinions written out by him, and signed by us— that said opinions did not fully set forth our reasons for refusing the licenses therein named, it is now agreed that we add or supplement these additional reasons, which shall be attached to said opinions by the clerk of the court and filed as a part of the record, and to have equal standing in date as if filed on the 14th of April with the opinions referred to above.

In the matter of the applications for license by Henry Leister, J. C. Swoope, H. C. Wallace, James O'Neill, and E. F. Gould.

Upon the application of Henry Leister, we refused said license because he had but fourteen petitioners for said license, while there were 207 signers to the special remonstrance against the granting of a license to the said Henry Leister, and further because Henry Leister was refused a license by the court a year ago because of wilful violation of the liquor laws.

Upon the application of J. C. Swoope, we refused a license because he had but fourteen petitioners for license, while 283 signed a special remonstrance against granting a license to said J. C. Swoope. Further, said J. C. Swoope was refused a license a year ago by the court, for violations of the liquor laws.

Upon the application of H. C. Wallace, we refused a license because he had but thirteen petitioners for a license, while there was a special remonstrance signed by 266 persons, against granting a license to said H. C. Wallace.

Upon the application of James O'Neill, we refused a license because it was known to the court that said O'Neill had violated the liquor laws last year, and therefore was not a proper person to be intrusted with a license.

Upon the application of E. F. Gould, we refused a license for the reason that it was known to the court that he had violated the liquor laws, and that he was not a proper person to be intrusted with a license.

Using a sound discretion, and after considering each application separately, we refused license to the persons before named, for the reasons stated, and for the further reason that said license, in each case, we do not consider necessary for the accommodation of the traveling public.

The assignments of error specified in each case the action of the court in refusing the license to the petitioner.

1. When he had complied with every requirement of the law and rules of court, when there was no remonstrance, evidence, or objection presented to the court that his house was not necessary for the entertainment of strangers and travelers.

2. When it was admitted and conceded by the court that his house was necessary for the accommodation of the public and entertainment of strangers and travelers, and that he had complied with all the requirements of the law.

3. For the reason only that they did not think it necessary to license a hotel to sell intoxicating liquors.

*P. M. Lytle, R. Bruce Petrikin,* and *M. M. McNeil,* for appellants.—Under the act of March 22, 1867, the court, in considering an application for liquor license, should have such regard to the number and character of the petitioners, for and against the application, as is required by all the circumstances of the case,—which include the knowledge possessed by the court, facts whereof judicial notice should be taken, the testimony of witnesses, the opportunity of knowledge of the petitioners, their bias, prejudice, interest, and like matters,—and grant or withhold the license accordingly.

It is the necessity for a hotel or eating house which is to be considered; the necessity for a license to sell intoxicating drinks follows as a necessary incident. Beaver County Licenses, 3 Pa. Co. Ct. 56, 19 W. N. C. 359.

Where the application is for a house not before licensed, perhaps the only evidence of its necessity is to be found in the papers filed, having due regard to the number and character of the petitioners and remonstrants. The best evidence of the necessity of a public house heretofore licensed is proof of the amount of the lawful business done by it during the preceding year. Lycoming County Licenses, 3 Pa. Co. Ct. 90, 19 W. N. C. 358.

The act of deciding is judicial, in which the private feelings of the judge can have no legitimate place. Every application must be determined on its own circumstances and merits, on its own evidence and facts. Schlaudecker v. Marshall, 72 Pa. 200; Re Conroy, 3 Pa. Co. Ct. 52.

"Our system of licensed inns and taverns," says Judge WOODWARD, in Omit v. Com. 21 Pa. 434, "is founded in the just idea that it is the duty of every community to provide for the accommodation of strangers and travelers who come into their midst. . . . To induce persons to establish such houses, and to maintain the requisite arrangements and attendants, a monopoly is offered them in the exclusive right to retail by small measure, vinous and spirituous liquors. . . . Such is the system for fulfilling the duties which the community owe to strangers and travelers."

If the law then intends that the discretion to be exercised must be a sound discretion and according to law, and the court of King's bench had a power to redress things that are otherwise done, then this court, if satisfied that the refusal of licenses was a mere arbitrary exercise of discretion and not the exercise of a sound judicial discretion according to the facts and circumstances of each case, has the power of the king's bench to give redress; for in statute giving existence to this court after enumerating its several powers the act concludes: "And generally shall minister justice to all persons and exercise the jurisdictions and powers hereby granted concerning all and singular the premises according to law, as fully and amply to all interests and purposes whatsoever as the justices of the court of king's bench, common pleas, and exchequer at Westminster or any of them can or may do." Bioren's Laws of Pa. 140; Brightly's Purdon's Digest, 1576.

*W. McK. Williamson* and *Samuel T. Brown,* for appellees. —The action of the court below in granting or refusing a license

is not the subject of appeal, and being discretionary with the court of quarter sessions it cannot be reviewed in the supreme court. Schlaudecker v. Marshall, 72 Pa. 200; Toole's Appeal, 90 Pa. 376; Reed's Appeal, 114 Pa. 452, 6 Atl. 910.

This court does not sit to review the opinions of judges. If the judgment is right, this court will not reverse because a wrong reason is given for it.

The act of 1867 has been construed and commented on in later cases, but not in Schlaudecker's Appeal. The latest and fullest review of this act, and the discretion it grants, is found in Reed's Appeal, 114 Pa. 452, 6 Atl. 910 (supplemented by an editorial note, 4 Cent. Rep. 909). In that case the license was granted by the court of quarter sessions; but although this court was of the opinion that the court below had not given due weight to the remonstrances against license, yet, inasmuch as the law gives no appeal, the supreme court had no jurisdiction, and the appeal was quashed, and the decree affirmed.

The act itself, the debates at the time of its passage (see Legal Record of 1867, pp. 523, 524), and this decision, all show clearly that the very purpose of the act was to give the people of the community a chance to be heard on the question of licensing grog shops in their midst, untrammeled with the question of necessity for a house to feed and lodge strangers and travelers. Toole's Appeal, 90 Pa. 376.

Error cannot be assigned for matters in the discretion of the court. Dubois v. Glaub, 52 Pa. 238; Waldron v. Waldron, 55 Pa. 231; Pringle v. Pringle, 59 Pa. 281.

It must be a flagrant abuse of the discretion vested in the court below, which will induce the supreme court to reverse. Christine v. Whitehill, 16 Serg. & R. 98, and Robeson v. Whitesides, 16 Serg. & R. 320.

A certiorari only brings up the record for review. The opinion of the court is no part of the record. This court only examines the regularity of the proceedings, and cannot look into the evidence, although incorporated in the opinion. Shenango Twp. v. Wayne Twp. 34 Pa. 184; Re Church Street, 54 Pa. 353; Re Kensington & O. Turnp. Co. 97 Pa. 260.

PER CURIAM:

The records in the cases before us are without fault, and as

the facts cannot be brought before us on appeal, we must affirm the certioraris, and dismiss the appeals.

We may observe, however, that if we are to regard the second opinion of the associates as containing a statement of the facts of the several cases, their power to refuse the licenses was undoubted, and was properly exercised. It is true, their first opinion, as drawn for them by the president judge, puts them in the awkward position of a clear violation of the prescriptions of the act of assembly; but this, on further consideration, they had a right to correct and set forth the facts on which they acted.

The judgments on the certioraris are affirmed and the appeals dismissed, at the costs of the appellants.

